# Wytheville.

## DAVIS' ADM'R v. McMULLEN'S ADM'R.

### JUNE 27, 1889.

1. COMMON LAW PRACTICE—*Statute of limitations.*—Where action is on covenant by defendant to execute bonds at a stated time, statute of limitations begins to run at that time, though in same instrument plaintiffs covenant to convey at same time the property to defendant and fail to do so, and though they did convey it later and defendant accepted the conveyance.

2. IDEM—*Waiver.*—Acceptance of such conveyance six years after the stated time, does not constitute a waiver of the covenant, so as to cause the statute to run only from the acceptance, where plaintiffs do not aver that they were ready and willing and offered to convey at the stated time, or were prevented from doing so by defendant, and there is no evidence of waiver.

3. IDEM—*Plea of statute of limitations.*—That defendant " did not within 20 years next before the bringing of this suit break his covenant," is a good plea of the statute of limitations.

4. IDEM—*Defective plea cured by verdict.*—If defective and not demurred to, such plea is cured after verdict under Code of 1873, ch. 177, sec. 3.

Error to judgment of circuit court of Smyth county rendered December 10, 1887, in an action of covenant wherein John W. Richardson, administrator of Harold P. Davis, deceased, was plaintiff, and F. W. Leonard, administrator of Fayette McMullen, deceased, was defendant.

The action was founded on the following contract:

" This contract, made this 18th day of May, 1853, between James F. Pendleton, Edward A. Scott, and Harold P. Davis, of the one part, and Fayette McMullen, of the other part, wit-

nesseth: that said Pendleton, Scott, and Davis on their part have this day sold to said McMullen, for the sum of two thousand seven hundred and seventy-five dollars, the brick house and lot in the town of Marion formerly owned by Robert A. Davis, and purchased by James F. Pendleton at the sale made by W. B. Morgan, trustee; and Pendleton, Scott, and Davis bind themselves to make, or cause to be made, to said McMullen a good title to said lot and appurtenances on or before the first day of October next, and now give said McMullen possession of said lot and appurtenances, reserving the rents that may accrue on any part or the whole of same up to 1st October next, and to see that no part of said property be injured by negligence, and that it be delivered up in its present condition, except natural wear and tear; and said McMullen, on his part, has this day paid to said Pendleton, Scott, and Davis the sum of twelve hundred and two dollars in a check on the bank at Jeffersonville, upon which he is to have interest till 1st October next, and on that day to execute notes in equal amounts, payable in one and two years from their date, for the residue of said two thousand seven hundred and seventy-five dollars.

"For the faithful performance of the foregoing stipulations the parties bind themselves to each other in the penal sum of six thousand dollars. Witness the following signatures and seals:

(Signed)    J. F. PENDLETON.    [Seal.]
                 E. A. SCOTT.           [Seal.]
                 HAROLD P. DAVIS.  [Seal.]
                 F. McMULLEN.        [Seal.]

Teste: W. D. STROTHER."

It appears by the record that said Pendleton, Scott, and Davis did not, on said 1st day of October, 1853, make or cause to be made to said McMullen the deed according to their undertaking, as set forth in the contract aforesaid. On the contrary, no deed was made or offered to be made until the 18th day of April, 1860, when, by the direction of said McMul-

len, the said Pendleton, Scott, and Davis caused the said W. B. Morgan, trustee, to convey said house and lot to one John H. Thompson, and contemporaneously therewith said Thompson, in consideration of the conveyance to him, conveyed to said McMullen a valuable farm in Smyth county.

The plaintiff declared on the contract, above set forth, and averred in general terms that " he and his co-obligees did do and perform all things which, by the terms, and according to the true intent and meaning of said writing obligatory, they had undertaken and were bound to do and perform; and he further says that said McMullen, in his lifetime, did not on the 1st day of October, 1853, execute his bonds in equal amounts, payable in one and two years, for the residue of $2,775, against the form and effect of the said writing obligatory, and ot his covenant made in that behalf as aforesaid, and so the plaintiff says," &c.

At the September term, 1886, the death of the plaintiff, H. P. Davis, was suggested, and by agreement the cause was revived and proceeded with in the name of John W. Richardson, sheriff of Smyth county, and as such, administrator of H. P. Davis, deceased. Thereupon the defendant demurred to the plaintiff's declaration, and the plaintiff joined therein; and on consideration, the court sustained the demurrer; and on motion of the plaintiff, by his attorney, leave was given him to amend his declaration, and for that purpose the cause was remanded to rules.

The amendment not having been made at rules, the cause stood dismissed, but at the April term, 1887, the dismission of the cause in the office was set aside on the motion of the plaintiff, and he filed his amended declaration, to which the defendant demurred, and the plaintiff joined therein, and the cause was continued.

The amended declaration, after repeating the general averment in the original, that the plaintiff and his co-obligees did do and perform all things which by the terms and according to

the true intent and meaning of the said writing obligatory they had undertaken and were bound to do and perform, add the words, "They did cause the said property to be conveyed by W. B. Morgan, trustee, to John H. Thompson, the vendee of the said McMullen, according to the directions of said McMullen." And for breach it is alleged that "said McMullen, in his life time, did not on the first day of October, 1853, or at any other time, execute his bonds," &c., the breach being laid as in the original, except with the addition of the words, "or at any other time."

At the August term, 1887, the court sustained the defendant's demurrer to the plaintiff's amended declaration, and on motion of the plaintiff, leave was given him to again amend his declaration, and for that purpose the cause was remanded to rules.

The powers of F. Alexander as administrator of F. McMullen having been revoked, the estate was committed to F. W. Leonard, sheriff of Smythe county, and as such administrator *de bonis non* of F. McMullen, deceased, and by agreement of parties the cause was revived and proceeded with accordingly. And at the December term, 1887, leave was given the plaintiff to file his second amended declaration, which was accordingly filed.

This amended declaration, after setting forth, as was done in the original and in the first amended declaration, the terms of the contract for the alleged breach of which the action was brought, then proceeds to aver, in addition to what had been averred in the two previous declarations, "that in lieu of making, or causing to be made, to said McMullen a good title to said house and lot, they did cause the said property to be conveyed by W. B. Morgan, trustee, to John H. Thompson, the vendee of the said McMullen, which was accepted by the said McMullen in lieu of the covenant to make, or cause to be made, to him a good title," and then adding the former averment of breach "that the said McMullen, in his life time, did

not on the 1st day of October, 1853, or at any other time, execute his bonds in equal amounts, payable in one and two years, for the residue of $2,775, against the form and effect of the said writing obligatory, and of his covenant in that behalf as aforesaid," &c., &c.

To this second amended declaration of the plaintiff the defendant also demurred, and the plaintiff joined in the demurrer, but the court overruled the demurrer, and thereupon the defendant pleaded as follows:

"The defendant, for plea, saith that his intestate, in his life time, hath well and truly observed and performed the condition of the writing in the declaration mentioned, and that his said intestate did not break his covenant in manner and form as the plaintiff hath complained, and of this he putteth himself upon the country."

"And the said defendant, for further plea, saith that his intestate did not within twenty years next before the beginning of this suit break his covenant as the plaintiff hath alleged;" and for further plea, pleaded payment, and with his plea of payment the defendant offered his account of payments, to the filing of which the plaintiff objected, but the court overruled the objection and allowed the account to be filed.

Issue was thereupon joined upon the defendant's said plea, and the trial was then proceeded with before a jury.

At the trial, when the plaintiff had introduced his evidence and rested, the defendant asked for a single instruction, to which the plaintiff objected, but the court overruled the objection and gave the instruction as asked, and the plaintiff excepted, and this is the plaintiff's exception No. 1. Then the plaintiff asked for a single instruction, which was objected to by the defendant, and the court sustained the objection and refused to give the instruction; and the plaintiff again excepted, and this is his exception No. 2.

The jury, after hearing all the evidence, returned the following verdict: "We, the jury, find for the defendant." And

thereupon the plaintiff, by his counsel, moved the court to set aside the verdict as contrary to the law and the evidence, which motion the court refused, and proceeded to give judgment according to the finding of the jury, to which action of the court the plaintiff also excepted, and this is his bill of exception No. 3, in which the court certifies all the evidence at the trial. And to the judgment of the court refusing to set aside the verdict and grant a new trial, a writ of error and *supersedeas* was allowed by one of the judges of this court.

*Daniel Trigg*, for the plaintiff in error.

*Sheffey & Richardson* and *Buchanan & Buchanan*, for the defendant in error.

RICHARDSON, J., after stating the case, delivered the opinion of the court.

The sole question for consideration and decision is, does the statute of limitations apply in this case? This question is fairly and fully presented in the instruction asked for by the defendant and given by the court. It is in these words: "The court instructs the jury that the breach of the covenant by the defendants' intestate, F. McMullen, sued for, was the failure of said McMullen to execute the bonds as stipulated in said covenant; and if the jury believe, from the evidence, that the breach aforesaid occurred more than twenty years before the institution of this suit, exclusive of the war and reconstruction period (seven years, eight months and fourteen days), then they must find for the defendant."

On giving this instruction, as asked for by the defendant, the plaintiff then asked for a counter-instruction, as follows: "The court instructs the jury that there was no right of action in this case until a performance by the plaintiffs of the covenant upon their part, as alleged in the declaration, by the exe-

cution of the deed provided for in the contract of ———, 1853, or a waiver of the terms of the contract and an acceptance of the deed to Thompson by the defendant, McMullen, as alleged; and if the jury believe, from the evidence, that on the 18th day of April, 1860, the said right of action to the plaintiff first accrued to sue upon the said contract, then the period of limitations is to be estimated from that time; and that in estimating the said period of limitations, the jury are to exclude from said estimate the term of seven years, eight months and fourteen days."

This instruction was refused by the court. These two instructions are the subjects, respectively, of the first and second bills of exception taken by the plaintiff.

It is unquestionably true that the instruction asked for by the defendant and given by the court, and which is the subject of the plaintiff's said first bill of exceptions, correctly propounds the law. And, for like reasons, it is equally true that the instruction asked for by the plaintiff, and refused by the court, was properly so refused, especially in view of the state of pleadings and evidence in the cause.

The real question thus presented to the jury, was whether or not the defendant's plea of the statute of limitations applied to the case. The action was for the alleged breach of his covenant by the defendant's intestate, in his lifetime, in not executing his bonds for the deferred payments of purchase money for the house and lot in the declaration mentioned, as stipulated for in the contract which was the foundation of the action.

On behalf of the defendant, the court in effect instructed the jury that the breach sued for occurred on the 1st day of October, 1853, and that, if they believed that more than twenty years elapsed between said breach and the time when the suit was brought, exclusive of the stay-law period, then they should find for the defendant; and it clearly appearing that more than twenty years had so elapsed, the jury accordingly found for the defendant. And in overruling the plaintiff's motion for a new

trial and entering judgment for the defendant, the court uses this language: "This day came again the parties, by their attorneys, the plaintiff's motion to set aside the verdict obtained against him in this cause on Saturday last, and to grant him a new trial, having been fully considered, is overruled, the court considering that the plea of the statute of limitations applies to this case. Therefore it is considered," &c. The plea of the statute of limitations was thus a complete bar to any recovery, unless the plaintiff could reply something to take the case out of the statute; but this they did not attempt to do, and hence the finding and judgment complained of.

The plaintiff's second bill of exceptions is predicated upon the idea that, although the plaintiff and his co-obligors, in the lifetime of the latter, did not make or cause to be made to the defendant's intestate the deed for the house and lot, as by the express terms of their covenant they were bound to do, to wit: on the 1st day of October, 1853. Yet, inasmuch as they did afterwards, to-wit: on the 18th day of April, 1860, by the direction of the defendant's intestate, convey to his vendee, John H. Thompson, such after conveyance amounted to a waiver by the defendant's intestate of the stipulation in the contract, and that the statute only began to run from the time when the conveyance was actually made, and that the court, therefore, erred in refusing to give said instruction asked for by the plaintiff.

It is not possible to maintain this view under the pleadings and evidence in the cause. The covenants set forth in the contract are mutual and dependent covenants. The plaintiff and his co-obligors expressly covenanted to convey, or cause to be conveyed, to the defendant's intestate the house and lot on the 1st day of October, 1853, and the defendant's intestate covenanted to execute his two bonds for the deferred payments at the same time.

It is alleged in the declaration that the plaintiff and his co-obligors " did do and perform all things which, by the terms

and according to the true intent and meaning of the said writing obligatory, they had undertaken and were bound to do and perform, except that they did not make to said McMullen a good title to said house and lot, and the plaintiff avers that in lieu of the making or causing to be made to said McMullen a good title to said house and lot, they did cause the said property to be conveyed by W. B. Morgan, trustee, to John H. Thompson, the vendee of the said McMullen, according to the direction of said McMullen, which was accepted by said McMullen in lieu of the covenant, to make, or cause to be made, to him, a good title," &c.

This is but an admission that the plaintiff and his co-obligors broke their covenant, and did not convey until some six years after the time they had bound themselves to convey. There is no averment that the plaintiff and his co-obligors were at the stipulated time ready and willing to convey, or cause to be conveyed, the house and lot, or that they, being so ready and willing, offered to convey, or that any act of the defendant's intestate prevented them from being then ready and willing to convey, or from actually conveying as they had undertaken and bound themselves to do. Nor does the declaration contain any averment of anything which, if proved, could amount to a waiver of the rights of the defendant's intestate under the sealed contract between the parties. Surely the acceptance of a conveyance long after he was entitled to have it could have no such effect as to deprive the defendant's intestate of the protection afforded him by the express covenants contained in the sealed agreement. There can be no doubt that the contract relations of the parties remained unchanged, and that the rights of the defendant's intestate were in no way impaired by his acceptance of the deed at a later day than that stipulated for in the contract.

In *Combs* v. *McHenman*, 2 Watts & Sergeant (37 Am. Dec., 505), was an action of covenant upon a sealed agreement by which the plaintiff bound himself to deliver to the defendant

two hundred bushels of clover seed, at the town of Indiana or at the city of Pittsburg, or one hundred bushels at each locality, on or before the first of February, 1839. The defendant agreed to pay fifteen dollars per bushel at the time of delivery. After fifty-five bushels had been delivered at Pittsburg, the defendant agreed to receive the residue at Indiana, which the plaintiff accordingly delivered at that place within the time specified. The defendant made payments as follows: Upon the 29th of January, 1839, seventy-five dollars, and upon the 14th of February, following, seventy-two dollars and fifty cents. No other payments being made, after demand, the plaintiff removed the seed and sold it for the sum of eleven dollars and fifty cents per bushel. In the action, which was on the original sealed agreement, there was a verdict and judgment for the plaintiff; and on writ of error it was held: 1st. That the place of delivery of articles stipulated in sealed contract is a condition precedent merely, imposed upon the party bound, which may be waived by the party entitled to its performance without producing any alteration of the original contract. 2d. That agreement to accept delivery at a place other than that specified in the original contract does not constitute a new contract. 3d. That covenant may be sustained upon a contract under seal, notwithstanding by subsequent consent of the parties the place at which the articles called for were to be delivered was altered, and performance may be shown by evidence of a delivery at the place agreed upon. 4th. That upon a contract to deliver articles at a particular time and place for a specified price, the party bound thereby, after making delivery in the manner agreed upon, if the price be not paid, may remove the articles and resell them, and may recover upon the original contract as for a breach thereof. 5th. That a recovery is not defeated by the acceptance by the contractor of a portion of the consideration, prior to the removal and sale by him of the articles delivered. 6th. That the measure of damages

is the difference between the contract price and the sum for which the articles were subsequently sold.

That case is the converse of the case at bar, and while much that was decided therein has no direct application to the case in hand, yet, for the purposes of this case, it illustrates the fact that in this case no new contract was made amounting to a waiver of the sealed agreement between the parties, and that the action was, therefore, necessarily brought for the alleged breach of the original contract; and the further fact, that though the defendant's intestate, McMullen, accepted the deed after the breach of the original contract, that fact in no manner varied the terms of that contract, nor in any way deprived him of his defence thereunder, there being no proof of any express agreement at the time of the acceptance of the deed that the original contract was waived. The principle is that the alteration of the contract must be such as to constitute a new contract. *McManus* v. *Cassidy*, 66 Pa. St., 260. And that a stipulation by parol waiving performance of part of a covenant is not an alteration of a sealed agreement. *Sarvall* v. *Rader*, 24 Pa. St., 285; *McGrann* v. *North Lebanon R. R. Co.*, 29 *Id.* But if the modification by parol is in relation to some particular matter essential to the defendant's liability upon the original agreement, the latter will be treated as abandoned, and the form of the action in that case is assumpsit. *Lehigh Coal and Nav. Co.* v. *Harlem*, 27 Pa. St., 442; see note to *McCombs* v. *McKennan*, *supra*, at p. 506.

In the present case, not only is there nothing alleged amounting to a waiver of the stipulation to convey to the defendant's intestate on the first day of October, 1853, when he was to execute his bonds for the deferred payments, but the action is founded on the original contract, and is for the alleged breach by the defendant's intestate in failing to execute his bonds at *the time* therein specified.

Obviously, if the plaintiff desired to rely upon the fact that the cause of action did not accrue until the 18th of April, 1860,

he should have so declared in the proper form of action, or by filing a special replication to the plea of the statute of limitations. 2 Chitty's Pl. (ed. 1876); Angel on Limitations, secs. 282, 292; *Rice* v. *White*, 4 Leigh, 474.

At the hearing here, for the first time, the objection is made by counsel for the plaintiff in error that the statute of limitations, as pleaded, raised an immaterial issue, and it is insisted that a repleader should be awarded. The form of the plea is, that the "defendant's intestate did not, within twenty years next before the bringing of this suit, break his covenant, as the plaintiff hath alleged." It is a good plea in an action of covenant to plead that the defendant had not broken the covenant as alleged in the declaration. 5th Rob. Pr., 668. And if it can be pleaded generally that the defendant did not break his covenant at all, surely it is sufficient in form and substance to plead that he did not break it within twenty years next before the institution of the suit; for that is tantamount to saying that the right of action did not accrue at any time within that period. *James River and Kanawha Co.* v. *Adams,* 17 Gratt., 427, was an action of covenant in which the defendant company pleaded that it had not broken the covenant; on which plea issue was joined, and there was a verdict for the plaintiff. So, too, in the action of assumpsit, the form of pleading the general issue is, that the defendant did not undertake or promise in manner or form as alleged; and the plea of the statute of limitations is, that he did not undertake or promise as alleged within five years.

In 1st Selwyn's Nisi Prius (Wheaton), 142, it is said: "There are two forms in which this statute is usually pleaded—1st. That the defendant did not at any time within *six* years next before the commencement of the plaintiff's action undertake or promise, &c. 2d. That the cause of action mentioned in the declaration did not accrue at any time within *six* years next before the commencement of the plaintiff's action," &c. And in respect to these two forms of pleading the statute, the

learnèd author says: "The second form—viz., that the cause of action did not accrue within six years, may be adopted with safety in all cases, but it is more peculiarly applicable to the cases of actions brought for breach of promise founded on collateral and executory considerations, in which cases the first form would be improper, as will appear from the following case: The declaration stated that in consideration that the plaintiff would receive A. and B. into his house as guests, and diet them, the defendant promised," &c. Plea, *non assumpsit infra sex annos*—to which the plaintiff demurred. Judgment for the plaintiff in the common pleas. On error in B. R., it was agreed by the court that the plea was ill, for this being an executory collateral promise, the defendant cannot plead *non assumpsit infra sex annos*, but should have pleaded *causa actionis non accrevit infra sex annos*, for if the cause of action accrued within six years, it was immaterial when the promise was made.

For obvious reasons, the principle above laid down has no application to the plea in the present case. But, however this may be, our statute of *jeofails* puts the matter at rest. This statute, sec. 3, ch. 177, Code 1873, among other things, provides that no judgment shall be reversed for *any defect, imperfection or omission* in the pleading which could not be regarded upon demurrer, or for any other *defect, imperfection or omission* which *might have been taken advantage of on demurrer or answer, but was not so taken advantage of.* It is clear in the present case, first: that the statute of limitations was well pleaded; and, second, if the plea was defective in form or substance, the defect was the subject of demurrer; and there having been no demurrer, the defect cannot be taken advantage of after verdict. So, in *Lincoln* v. *Iron Co.*, 103 U. S., 415, it is said that it is a rule of the common law that where there is any defect or omission in a pleading, whether in substance or in form, which would have been fatal on demurrer, yet if the issue joined necessarily required on the trial proof of the facts so

defectively stated or omitted, and without which it is not to be presumed that the judge would have directed the jury to give the verdict, such defect or omission is cured.

We are clearly of opinion that the statute was well pleaded, and that, were it otherwise, the defect is cured after verdict. We are, therefore, of opinion to affirm the judgment of the said circuit court of Smythe county.

JUDGMENT AFFIRMED.